31 So.2d 96

**PAYNE v. STATE.**

8 Div. 502.

Court of Appeals of Alabama.

March 25, 1947.

Rehearing Denied April 8, 1947.

S. A. Lynne, of Decatur, for appellant.

A. A. Carmichael, Atty. Gen., and Mac-Donald Gallion, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The undisputed evidence in this case portrays the commission of an atrocious crime, the victim being a paralytic by the name of J. G. Wilson. Said evidence tends to show that this afflicted man and his wife lived in a small house on the Joe Wheeler Highway near Hillsboro, and conducted a rural filling station and small grocery store therein. On May 9, 1945, he, Wilson, was held up, and robbed by two men and a woman. These parties were positively identified as being this appellant, his wife, and his (appellant's) brother. Wilson testified that at about 8:30 P.M. on May 9th he went out to a car which had pulled up to his store, and this appellant got out and went around the store building. Wilson asked the woman how much gas they wanted to buy and she replied five gallons. We here quote from the transcript the following questions and answers of Mr. Wilson, the injured party:

"* * * and I went and put the 5 gallons of gas in the car, and that brother of his was standing at the radiator of the car, and he said, 'We need a quart of oil,' and Waldon was back by then.

"Q. Had Waldon come back from behind the house when Eddie said that? A. Yes, he was back and went in the house ahead of me, and I went in the house and turned to get the oil.

"Q. When you go in the front door of your store where is the oil? A. Right at the left side, against the wall.

"Q. Then what happened? A. He was standing there.

"Q. Who? A. Waldon, and I reached down to get the funnel and he said, 'hands up.'

"Q. That was Waldon said that? A. Yes, and he fired.

"Q. What did he fire? A. A gun.

"Q. A pistol? A. Yes, sir, a pistol, and I looked around and he fired and it burned my face, and then he swung it around and hit me right here.

"Q. Swung the pistol? A. Yes, sir.

"Q. And hit you up on the head? A. Right here, and I fell.

"Q. Is that what caused that scar? A. Yes, sir.

"Q. Over your right eye? A. That is it.

"Q. Turn around so the jury can see that scar—now, that scar over your right eye was caused by that lick with that pistol? A. Yes, sir.

"Q. Is this defendant over here the one that hit you?. A. Right there.

"Q. Now, you said you fell then? A. I did.

"Q. Did you fall in that space between your oil containers and the air compressor? A. I did, and my head was about against the west wall.

"Q. All right, tell the jury what this defendant did then, if anything? A. He, Waldon, beat my head with something, I couldn't see.

"Q. You mean he got down on you and beat you? A. Yes, he got down on me and beat my head with something, I couldn't see.

"Q. When you fell did you fall with your face to the floor? A. I did.

"Q. And he got on top of you and beat you in the back of the head? A. Yes, sir.

"Q. Was that a hard, blunt object that he hit you on the head with? A. Seemed like it was.

"Q. Did it break the skin? A. On one place, yes.

"Q. And how many times did he hit you? A. Four or five, I don't remember.

"Q. That was after he had already hit you in the head with the pistol and you had fallen on your face on the floor? A. Yes, sir.

"Q. He got on you and hit you four or five times? A. Yes, sir.

"Q. Then what did he do, if anything? A. He reached down and grabbed my pocket and bill fold and tore the pocket off and got my bill folder.

"Q. Now, how much money did you have in that bill fold? A. I know I had $450.00 in currency, bills.

"Q. What kind of bills were they? A. Twenties and tens and fives and ones and one $2.00 in there.

"Q. Now, while you were lying there on the floor did you hear anyone else say anything? A. Yes, sir.

"Q. Who was that? A. He got up.

"Q. Sir? A. About the time he got through.

"Q. And got off of you and took your money? A. Yes, sir.

"Q. Then what did you hear, if anything? A. I heard my wife begging to not kill her.

"Q. She was asking somebody not to kill her? A. Yes, sir.

"Q. In a pleading tone of voice? A. Yes, sir.

"Q. Was there any response made to her plea? A. He said, 'tell me where that other money is at, I will kill you.'

"Q. That is the one you later found out was Eddie? A. Yes, sir, I later found out he was Eddie.

"Q. And he told your wife to tell him where the rest of the money was or he would kill her? A. Yes, sir.

"Q. Now, I will show you this bill fold, is that the bill fold that you had in your pocket? A. It sure is.

"Q. And is that the bill fold that this defendant took off of your person? A. Out of my pocket.

"Q. And it had $450.00 of money in it? A. Yes, sir, it did.

"Q. And that is the same bill fold? A. That is the same bill fold.

"Q. And the man that hit you over the eye and took your money is the defendant over there? A. Yes, Waldon Payne."

There was other testimony by this witness of like import.

The evidence also shows that a short time after the offense was committed, certain officers of the highway patrol arrived at the scene of the crime and in testifying they stated when they arrived Mr. Wilson was bleeding from a wound on his head over his right eye, and after the ambulance came and carried Mr. Wilson to the hospital they entered the store, and upon being asked what was the condition of that room, replied, "Well there was blood all over the floor there, and over in corner a big puddle of blood a foot or more across, etc."

■ The indictment in this case contained two counts, in words and figures as follows:

"State of Alabama, ⎱
Lawrence County ⎰

Circuit Court
August Term, 1945

"The Grand Jury of said County charge that before the finding of this Indictment Waldon Payne, alias Walden Payne, whose name is to the Grand Jury otherwise unknown, feloniously took Four Hundred and Fifty Dollars of currency and silver coin, lawful money of the United States of America, a further description of which is to the Grand Jury unknown, of the value of Four Hundred and Fifty Dollars, the property of J. G. Wilson, from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama.

"Count 2. The Grand Jury of said County further charge that before the finding of this indictment Waldon Payne, alias Walden Payne, whose name is to the Grand Jury otherwise unknown, feloniously took Four Hundred and Fifty Dollars in Five Dollar, Ten Dollar, Twenty Dollar, and One Dollar bills, and in One dollar, Fifty cents, Twenty-five cents, Ten cents, and Five cents coins, lawful money of the United States of America, a further description of which is to the Grand Jury unknown, of the value of Four Hundred and Fifty Dollars, the property of J. G. Wilson, from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."

The defendant interposed demurrer to the indictment based upon several grounds. The trial court overruled the demurrer, and in so doing committed no error. The indictment not only followed the form which the Code Tit. 15, § 259, form 95, prescribes for robbery, but was also in strict compliance with provisions of Title 15, Section 232, Code 1940.

■■ Appellant's able and earnest counsel presents several insistences of error to effect a reversal of the judgment of conviction from which this appeal was taken, principal among which is that the defendant was entitled to a directed verdict, hence the court erred in refusing the request for the affirmative charge, and in overruling defendant's motion for a new trial. There is no semblence of merit in either of these insistences, as there was no phase of this case which entitled the defendant to the affirmative charge. Likewise no error appears in the action of the court in overruling and denying the motion for a new trial. These conclusions being so clearly apparent, we see no necessity of an extended discussion. We have carefully and attentively considered each and every exception reserved by the appellant pending the trial in the court below, and presented here, and hold that no error prejudicial to the substantial rights of the defendant appears. This results of course in here holding that the judgment of conviction from which this appeal was taken is due to be affirmed. It is so ordered.

Affirmed.